652 A.2d 849

Viola KOHLMAN, Appellant,

v.

**WESTERN PENNSYLVANIA HOSPITAL, a Corporation, Fredrick W. Martin, M.D., Charles R. Wilson, Jr., M.D., Ellen K. Tabor, M.D., Ave Marie Bacher, M.D.**

Superior Court of Pennsylvania.

Submitted Oct. 27, 1994.

Filed Dec. 28, 1994.

Eleanor Smith, pro se appellant.

Richard J. Federowicz, Pittsburgh, for Western Pennsylvania Hosp. and Bacher, appellees.

Michael D. Heintzman, Pittsburgh, for Martin, Wilson and Tabor, appellees.

Before CIRILLO, TAMILIA and HOFFMAN, JJ.

CIRILLO, Judge:

This is an appeal from an order entered in the Court of Common Pleas of Allegheny County denying appellant Viola Kohlman's (Kohlman) motion to strike a judgment of non pros.

We affirm the order of the trial court, but remand the case so that Kohlman may refile her petition to strike the judgment.

On behalf of Kohlman, Eleanor C.K. Smith (Smith), as Kohlman's power of attorney, commenced a medical malpractice action against appellees Western Pennsylvania Hospital, a corporation, Frederick W. Martin, M.D., Charles R. Wilson, Jr., M.D., Ellen K. Tabor, M.D., Ave Marie Bacher, M.D. (sometimes collectively referred to as Defendants). The action stems from the medical care and treatment that Kohlman received from the above-named doctors at Western Pennsylvania Hospital.

On December 23, 1993, three of the defendant doctors filed a praecipe for rule to file a complaint. That same day, the Prothonotary of Allegheny County issued a rule to file a complaint within twenty days of service of the rule. Kohlman failed to file a complaint within that time frame, and Defendants filed praecipe for judgment. Judgment of non pros was entered against Kohlman on February 3, 1994.

On February 25, 1994, Kohlman filed a motion to strike the judgment of non pros and impose sanctions.[1] The motion was presented to the Honorable Judith Friedman on February 28, 1994. Apparently, Smith, as power of attorney for Kohlman, argued the motion before Judge Friedman. Judge Friedman denied the motion **"without prejudice because plaintiff was not represented in court by an attorney and did not appear on her own behalf."** Kohlman filed a notice of appeal on March 18, 1994.[2] On appeal, Kohlman presents one issue for our consideration:

1. In her motion to strike the judgment, Kohlman argued, in short, that she was never served with the rule to file a complaint and, therefore, the entry of judgment due to noncompliance with the rule was improper.

2. After Kohlman filed her notice of appeal, Defendants discovered that they had made an error in serving Kohlman with the rule to file a complaint. The Defendants, therefore, agreed to open (strike) the judgment. Kohlman refused to have the judgment stricken at that time, evidently, because she wanted the appellate courts to first decide whether she could be represented by Smith, one of her two Powers of Attorney.

Whether an individual who is not an attorney-at-law may represent a plaintiff in a medical malpractice action through the grant of a general power of attorney?

 A petition to strike an order or judgment may only be granted when a fatal defect appears on the face of the record. *Manor Bldg. Corp. v. Manor Complex Assocs.*, 435 Pa.Super. 246, 251, 645 A.2d 843, 846 (1994) (*en banc*). *See also DeCoatsworth v. Jones*, 536 Pa. 414, 639 A.2d 792 (1994). We will only reverse the trial court if there is a manifest abuse of discretion or error of law. *Parliament Indus., Inc. v. William H. Vaughan & Co., Inc.*, 501 Pa. 1, 8, 459 A.2d 720, 724 (1983).

In her motion to strike, Kohlman argued that she was never served with the rule to file a complaint. In fact, she alleged that she did not become aware of the rule to file a complaint until after she received the notice of judgment. Without deciding the merits of the motion, Judge Friedman denied Kohlman's motion to strike **without prejudice** because Kohlman was not represented by a licensed attorney, and because she did not appear on her own behalf. Kohlman contends that Judge Friedman's refusal to permit Smith to argue on Kohlman's behalf deprived Kohlman of her right to due process. We respectfully disagree.

Kohlman suggests that section 5603 of the Probate Code enables Smith, as her attorney-in-fact, to represent her in the underlying action. 20 Pa.C.S.A. § 5603. First, section 5602 defines the various forms of power of attorney. Particularly, subsection (a)(20) of section 5602 provides that an attorney-in-fact may be empowered by his or her principal to "pursue claims and litigation." 20 Pa.C.S.A. § 5602(a)(20). Next, section 5603 of the Probate Code describes how the powers enumerated in section 5602 are to be implemented. With respect to the attorney-in-fact's power to pursue claims and litigation, the attorney-in-fact may:

(1) Institute, prosecute, defend, abandon, arbitrate, compromise, settle or otherwise dispose of, and appear for the principal in, any legal proceedings before any tribunal re-

garding any claim relating to the principal or to any property interest of the principal.

 \* \* \* \* \* \*

(3) In general, exercise all powers with respect to claims and litigation that the principal could if present.

20 Pa.C.S.A. § 5603(s).

Pursuant to these provisions of the Probate Code, Smith, as attorney-in-fact, commenced the medical malpractice action against Defendants. This case, then, reduces to a single issue of law: whether an agent authorized to act for a principal under a statutory form power of attorney may bring suit as a pro se litigant in the principal's stead. We address this issue in two parts. First, is the unlicensed, in-court representation of another considered engaging in the practice of law and, thus, prohibited by Pennsylvania's statute proscribing the unlicensed practice of law? Second, if so, does the statutory form power of attorney overcome that prohibition?

■ The constitution of this Commonwealth has exclusively granted to the Supreme Court of Pennsylvania the power to regulate the practice of law before all the courts of Pennsylvania. Pa. Const. art. V, § 10. In particular, subsection (c) of Article V, section 10 provides:

(c) The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts ... and for admission to the bar and to practice law....

Pa. Const. art. V, § 10(c). To help administer admission to the bar, the Supreme Court has created the Pennsylvania Board of Law Examiners, which, among other things, establishes standards for admission to the bar. Pa.B.A.R. 104. The Supreme Court has also adopted the Code of Professional Conduct in order to govern the conduct of those individuals privileged to practice law in this Commonwealth. Additionally, to assure that lawyers admitted to practice in the Commonwealth continue their education to have and maintain the requisite knowledge and skill necessary to fulfill their professional responsibilities, the Pennsylvania Supreme Court has

adopted the Pennsylvania Rules for Continuing Legal Education. Pa.R.C.L.E. 102. *See generally McLaughlin v. Philadelphia Newspapers, Inc.*, 465 Pa. 104, 348 A.2d 376 (1975); *Appeal of Hanson*, 330 Pa. 390, 198 A. 113 (1938). These stringent requirements are intended to protect and secure the public's interest in competent legal representation. In fact, Mr. Justice (later Chief Justice) Stern once opined:

> While, in order to acquire the education necessary to gain admission to the bar and thereby become eligible to practice law, one is obliged to 'scorn delights, and live laborious days,' the object of the legislation forbidding practice to laymen is not to secure to lawyers a monopoly, however deserved, but, by preventing the intrusion of inexpert and unlearned persons in the practice of law, to assure to the public adequate protection in the pursuit of justice, than which society knows no loftier aim.

*Shortz v. Farrell*, 327 Pa. 81, 91, 193 A. 20, 24 (1937).

Because the practice of law involves matters of extreme public concern, the General Assembly has also taken measures to control and prevent the unauthorized practice of law:

> Any person who within this Commonwealth shall practice law ... without being an attorney at law ... commits a misdemeanor of the third degree.

42 Pa.C.S.A. § 2524 (Supp.1994).

While the rules and laws proscribing the unauthorized practice of law are clear, defining the abstract boundaries of the "practice of law" would be an elusive, complex task, "more likely to invite criticism than to achieve clarity." *Shortz*, 327 Pa. at 84, 193 A. at 21. This is so because the practice of law may well be used in a different sense for various purposes. Nonetheless, in *Dauphin County Bar Assoc. v. Mazzacaro*, 465 Pa. 545, 351 A.2d 229 (1976), the Supreme Court attempted to place the meaning of legal practice into some kind of workable format:

> Where ... a judgment requires the abstract understanding of legal principles and a refined skill for their concrete application, the exercise of legal judgment is called for.

> While at times the line between lay and legal judgments may be a fine one, it is nevertheless discernible. Each given case must turn on a careful analysis of the particular judgment involved and the expertise that must be brought to bear on its exercise.

*Id.* at 553, 351 A.2d at 233 (citation omitted).

By whatever standard or definition, the in-court representation of another—a paradigmatic function of the attorney-at-law—amounts to the "practice of law" in this Commonwealth. *Id.* at 555, 351 A.2d at 234 (citing *Fitchette v. Taylor,* 191 Minn. 582, 254 N.W. 910 (1934)). Here, Smith, in attempting to represent Kohlman before Judge Friedman with respect to the motion to strike, specifically, and with respect to the medical malpractice action, generally, was engaged in the unauthorized practice of law according the Pennsylvania law. 42 Pa.C.S.A. § 2424. *See* 7 Am.Jur.2d *Attorneys at Law* § 1 (1980) ("practice of law ... embraces the preparation of pleadings and other papers incident to actions and special proceedings, the management of such actions and proceedings on behalf of clients *before judges and courts*") (emphasis added). *Compare Dauphin County Bar Assoc. v. Mazzacaro,* 465 Pa. 545, 351 A.2d 229 (1976) (holding that a public adjuster may not represent an accident victim as an attorney-in-fact because "the proper protection of members of the public demands that no person be permitted to act in the confidential and demanding capacity of a lawyer unless he is subject to the regulations of the legal profession") and *Commonwealth v. Carroll,* 358 Pa.Super. 357, 517 A.2d 980 (1986) (holding that defendant could not be represented *in court* by a non-lawyer; determination of qualifications required to be a lawyer was exclusively within authority of Supreme Court) and *McCain v. Curione,* 106 Pa.Commw. 552, 527 A.2d .591 (1987) (holding that the Commonwealth Court was without jurisdiction to consider arguments and motions made on behalf of parolee in a civil action that was filed by another prisoner who was not licensed to practice law) *with Estate of Reifsneider,* 531 Pa. 19, 610 A.2d 958 (1992) (holding that a power of attorney authorizing attorneys-in-fact to commence legal proceeding touching

any matter in which the principal might be in any way concerned encompassed act of *filing election* to take share of estate of principal's deceased spouse) and *Shortz v. Farrell,* 327 Pa. 81, 193 A. 20 (1937) (holding that the preparation and filing of workmen's compensation pleadings does not constitute the practice of law because the forms are prepared by the Workmen's Compensation Board, are elementary in character, and do not rise to the dignity of "pleadings" as that term is understood in other judicial proceedings).

■ Sections 5602 and 5603 of the Probate Code do not empower an individual who is not licensed as an attorney-at-law to practice law in this Commonwealth. To construe the Probate Code so as to permit a non-attorney to appear and represent a principal in a court of record would be to permit the licensing and admission requirements to be circumvented. In addition, such an interpretation would effectively abrogate the Judicial Code's prohibition against the unlicensed practice of law. The potential problems created by the use of the power of attorney as a means of encouraging the unauthorized practice of law are obvious. Of course, if the principal wishes to proceed pro se, he or she may do so. However, the power of attorney cannot be used as a device to license laypersons to act as an attorney-at-law.

■ In rejecting Kohlman's interpretation of sections 5602 and 5603 of the Probate Code, we necessarily limit the scope of the powers enumerated in those sections. Restricted by the Judicial Code's prohibition on the unlicensed practice of law, the powers listed in sections 5602 and 5603 are best characterized as authorizing the agent to act as the client in an attorney-client relationship, with respect to probate and administrative matters. Section 5603(s)(1) authorizes the agent/attorney-in-fact to make decisions and undertake actions that are within the traditional province of a client. For example, the decisions whether to prosecute, defend, settle, or arbitrate a claim belong to the client, not to the attorney. The agent, therefore, while lacking authority to litigate pro se in

his or her principal's stead, creates and controls the attorney-client relationship as fully as if he or she were the principal.[3]

In conclusion, we find that Smith's legal representation of Kohlman is contrary to the constitution, the laws, and the public policy of this Commonwealth.[4] We, therefore, affirm the order of the trial court, but remand the case to allow Kohlman or her attorney to refile her petition to strike the judgment of non pros.

Order affirmed. Case is remanded with instructions to permit Kohlman to refile her petition to strike the judgment. Jurisdiction relinquished.

---

**3.** The attorney-in-fact may, of course, personally engage in all activities authorized under sections 5602 and 5603 that do not constitute the unauthorized practice of law.

**4.** Although not relevant to the disposition of this appeal, we find it interesting to note that neither the pleadings nor any of the other documents filed with the trial court were signed by Kohlman's joint attorney-in-fact, as is required by the Probate Code when more than one power of attorney is granted simultaneously. Specifically, section 5602(b) provides that a principal may provide for:

> The appointment of more than one attorney-in-fact, who shall act jointly, severally or in any other combination that the principal may designate, *but if there is no such designation, such attorneys-in-fact shall only act jointly.*

20 Pa.C.S.A. § 5602(b)(1) (emphasis added).

The general power of attorney in this case appoints "Eleanor C.K. Smith and Phyllis O'Brien" as Kohlman's attorneys-in-fact. The power of attorney did not designate whether Smith and O'Brien shall act jointly, severally, or otherwise; therefore, all actions taken on behalf of Kohlman required the signatures of both Smith and O'Brien. 20 Pa.C.S.A. § 5602(b)(1). However, there is nothing in the record to indicate that O'Brien joined Smith in the commencement and/or litigation of the underlying case. Smith alone appeared before the trial court on Kohlman's behalf. Additionally, all of the documents filed with the trial court and with this court were signed by Smith. Notwithstanding this technical deficiency, a second signature would not in any way remedy the fact that Smith is not licensed to practice law before the courts of this Commonwealth.